IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| IRVING LINDSEY, | : |
| Plaintiff | : |
| VS. | : |
| | :   1 : 00-CV-42 (RLH) |
| JO ANNE B. BARNHART, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

**ORDER**

The plaintiff herein filed this Social Security appeal on March 3, 2000, challenging the Commissioner's final decision denying his application for disability benefits.[1]  Jurisdiction arises under 42 U.S.C. § 405(g).  All administrative remedies have been exhausted.  Both parties have consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to the ordering of the entry of judgment.  The parties may appeal from this judgment, as permitted by law, directly to the Eleventh Circuit Court of Appeals.  28 U.S.C.

---

[1] Following the filing of plaintiff's complaint on March 3, 2000, the court granted plaintiff's Motion to Proceed *in forma pauperis* on March 23, 2000.   Thereafter, the court granted two (2) motions filed by the Commissioner to extend time for filing an answer.  On November 1, 2000, the plaintiff filed a Motion for Entry of Default and Interim Benefits, based on the Commissioner's failure to file a timely answer herein.  The Commissioner then filed a Motion to Remand pursuant to Sentence Six, stating that the Commissioner was unable to locate the claim file and needed a remand in order to search for the file or reconstruct it if necessary.  By order dated April 24, 2001, the court granted the Commissioner's Motion to Remand and denied the plaintiff's Motion for the Entry of Default and for Interim Benefits.  Plaintiff renewed his Motion for Interim Benefits on September 18, 2001.  The Commissioner responded in a timely fashion, noting that the matter was being expedited in the administrative levels below.  The Commissioner filed a Motion to Re-open the Case on August 26, 2004, simultaneously filing her Answer and administrative transcript. On October 27, 2004, the plaintiff filed a brief in support of his appeal.

§ 636(c)(3).

## BACKGROUND

The plaintiff filed an initial application for disability benefits in April 1994, which was denied upon initial review with no further action by the plaintiff. He then filed another application for disability benefits in April 1996, which was denied initially and upon reconsideration. Following a hearing, the ALJ determined that the plaintiff was not disabled, and the plaintiff then filed an appeal. The Commissioner was unable to answer the complaint, however, inasmuch as the Social Security Administration was unable to locate plaintiff's claim file. The claim was ultimately remanded for reconstruction of the file. Plaintiff filed another claim for disability and Supplemental Security benefits in January 2000. This claim and the April 1996 claim were ultimately consolidated for review. Following another hearing, the ALJ determined that although the plaintiff could not return to his past relevant work as a machine shop laborer, he remained capable of performing other jobs which existed in significant numbers in the national economy. The Appeals Council denied review, and the plaintiff then filed this appeal, arguing that the ALJ erred in finding the plaintiff's past work to be skilled, failed to properly consider opinion evidence regarding plaintiff's ability to work, erred in determining plaintiff's residual functional capacity, and improperly penalized the plaintiff for refusing to amend his onset date.

The plaintiff alleges that he became disabled on or about May 1, 1998, due to injuries to his back, neck, and left shoulder sustained in a fall.[2] The ALJ determined that the plaintiff suffered from severe chronic neck, back, and left shoulder pain resulting from his original injury

---

[2]In his original claim, the plaintiff alleged disability beginning July 10, 1992.

in July 1992 and that he could not return to his past relevant work as a "skilled sheet metal mechanic". The ALJ specifically found that the plaintiff's past relevant work was skilled. He further found that the plaintiff remained capable of performing medium work with no more than occasional overhead reaching with his nondominant arm, no more than occasional stooping, crouching or crawling, and the need to rotate positions frequently. Based on the testimony of a Vocational Expert ("VE"), the ALJ determined that the plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.

## DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal

analysis has been conducted mandates reversal." Cornelius, 936 F.2d at 1145-1146.

*Classification of past relevant work (PRW)*

Initially, the plaintiff argues that the ALJ erred in finding that his past relevant work was skilled, a finding the plaintiff asserts the ALJ relied upon in making an ultimate assessment of disability. The plaintiff argues that the ALJ's conclusion that his past relevant work was highly skilled was refuted by the VE, who testified that plaintiff's past relevant work was "[a]s a laborer, general in a machine shop . . . strength is heavy, and SVP is two, which is unskilled." R. at 103. The Commissioner argues that the ALJ's finding that the plaintiff's past relevant work was skilled ultimately had no impact on the determination of his disability status, inasmuch as the VE also provided testimony that a significant number of jobs existed in the national economy in the medium, as well as light, *unskilled* categories, which the plaintiff could perform. R. at 110.

In his written opinion, the ALJ provided specific reasons for finding that the plaintiff's past relevant work was skilled. The ALJ based his findings largely on plaintiff's statements and job classification issued in the context of his workers' compensation claim. Although the ALJ found that the plaintiff's past relevant work was skilled, and thereafter used the Medical-Vocational Guidelines as a framework for finding the plaintiff not disabled, the ALJ ultimately relied on the testimony of the VE, who noted both skilled and unskilled jobs available in significant numbers in the national economy which the plaintiff could perform. As the Commissioner points out, whether the plaintiff's past relevant work was considered skilled or unskilled, both the Medical-Vocational Guidelines and the VE's testimony point to and support a finding that the plaintiff was not disabled.

*Residual functional capacity*

The plaintiff further argues that substantial evidence does not support the ALJ's conclusion that he can do medium work, in that he improperly ignored the opinion that plaintiff was limited to light work issued by Dr. Bernard and improperly substituted his own opinion for that of a medical doctor.  However, a review of Dr. Bernard's treatment notes reveals that in August 1993, he assigned a 5% total body impairment rating and, disregarding the plaintiff's shoulder impairment, limited the plaintiff to medium work.  R. at 308.  In March 1994, Dr. Bernard noted that the plaintiff's limitations placed him in the light to medium job profile range, and that he could return to work within these limitations.  R. at 302.  Contrary to the plaintiff's assertions, there is no indication that Dr. Bernard limited the plaintiff exclusively to light work.  Moreover, in February 1995, another treating physician found the plaintiff to have a permanent partial disability rating of 0% and determined that he could return to work immediately, with no restrictions.  R. at 300.  Substantial evidence supports the ALJ's determination that the plaintiff was capable of performing medium work, as the medical record is void of any significant treatment for continuing back, neck or shoulder problems after 1995.  Two (2) of plaintiff's treating physicians found that the plaintiff could return to work as early as 1994, with only one (1) physician, whose largely unsupported opinion was properly discounted by the ALJ, opining that the plaintiff was disabled.

*Onset date*

Finally, the plaintiff argues that the ALJ improperly penalized him for refusing to amend his onset date.  The plaintiff maintains that this ALJ has "a history of offering to find claimants disabled if they will amend their alleged onset date.  Then, if they reject his offer he finds them

5

able to work." Plaintiff's brief at p. 20. At the hearing, the ALJ referenced a conversation held during a recess with plaintiff's counsel, in which he "mentioned to counsel the possibility that we might want to consider amending the onset date." R. at 120. The plaintiff wanted to discuss the matter with his wife, and the ALJ agreed to provide him additional time to make the decision, stating that "all I'm asking, counsel, is that Mr. Lindsey would like [sic] a quick decision if you'll just handwrite out something, preferably have it signed by you and Mr. Lindsey and just send it over saying that he is going to amend his onset date. And as I set [sic] here now in view of what I see, I would be agreeable to issuing a fully favorable decision with amending the onset date at age 60. I'm certainly not requiring anything." R. at 120-121. The plaintiff chose not to amend his onset date, "because he felt he was just as bad before he turned 60 as he was the day he turned 55." Plaintiff's brief at p. 20.

On the face of the hearing testimony and the ALJ's decision, there is no indication that the ALJ penalized the plaintiff for refusing to amend his onset date. The ALJ specifically stated that he was not requiring the plaintiff to amend the onset date, and that the decision of whether to do so was entirely up to the plaintiff.

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, the Commissioner's decision is hereby **AFFIRMED** pursuant to Sentence Four of § 405(g). **SO ORDERED**, this 20th day of May, 2005.

/s/ *Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

asb